```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Jason A. Czekalski

   v.                                     Civil No. 19-cv-121-LM
                                              Opinion No. 2020 DNH 052
New Hampshire Department
of Corrections, Commissioner


## **O R D E R**

Proceeding pro se, incarcerated plaintiff Jason A. Czekalski brings this 42 U.S.C. § 1983 action against the Commissioner of the New Hampshire Department of Corrections (the "Commissioner").  Czekalski, an inmate of the New Hampshire State Prison for Men, asserts unspecified constitutional claims against the Commissioner arising in connection with New Hampshire's Earned Time Credits law, RSA 651-A:22-a.  Czekalski's complaint is subject to preliminary review pursuant to 28 U.S.C. § 1915A.

**PRELIMINARY REVIEW STANDARD**

The court conducts a preliminary review of prisoner complaints filed by inmates seeking relief from government agents.  See 28 U.S.C. § 1915A.  In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding allegations constituting legal conclusions, the

court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Following preliminary review, the court must dismiss a prisoner's claims sua sponte if the court determines that it lacks subject-matter jurisdiction, that the defendant is immune from the requested relief or from suit, or that the complaint fails to state a claim upon which relief can be granted. <u>See</u> 28 U.S.C. § 1915A(b); Fed. R. Civ. P. 12(h)(3).

**DISCUSSION**

I. <u>No Deprivation of Constitutional Rights</u>

It appears unlikely that Czekalski can state a viable constitutional claim arising out of the alleged facts. In relevant part, the Earned Time Credits law provides as follows:

> The commissioner, after reviewing a prisoner's record, shall award to a prisoner or recommend that the prisoner receive a one-time reduction in his or her minimum and maximum sentences for successful completion of each of the following programs while incarcerated:
>
> (a) Education Programs:
>
> * * *
>
> (3) Associate's Degree[:] 180 day reduction in the prisoner's minimum sentence and 180 day reduction in the prisoner's maximum sentence.

>     (4) Bachelor's Degree[:] 180 day reduction in the prisoner's minimum sentence and 180 day reduction in the prisoner's maximum sentence.
>
>     (5) Master's Degree[:] 180 day reduction in the prisoner's minimum sentence and 180 day reduction in the prisoner's maximum sentence.
>
>     * * *

R.S.A. 651-A:22-a(I). Czekalski alleges that, over the period of his incarceration to date, he could "easily have earned" an Associate's Degree, a Bachelor's Degree, and a Master's Degree (and thus reduced his sentence by 540 days pursuant to the Earned Time Credits law), but for the fact that he lacks the requisite financial resources. Doc. no. 1 at ¶ 20. He alleges that to earn an Associate's Degree through programs available to inmates of the New Hampshire State Prison for Men costs at least $8,000, to earn a Bachelor's Degree costs at least an additional $8,000, and that to earn a Master's Degree costs at least an additional $4,800. He further alleges that if an inmate lacking sufficient financial resources to pursue a degree attempts to accumulate the necessary funds, the State of New Hampshire will seize the inmate's savings in order to pay for the costs of the inmate's incarceration. As a result, he alleges, the Earned Time Credits law provides for a sentencing reduction available in effect only to the wealthy.

Based on these allegations, Czekalski brings two Section 1983 claims against the Commissioner. In support of his first claim, Czekalski asserts that the Earned Time Credits law creates an unconstitutional system of "debt servitude." Id. at 2. He alleges that as a result of that system, he suffered deprivation of a "statutory liberty interest," namely denial of "the opportunity to earn a reduction of his sentence." Id. at ¶ 17. He does not further specify the nature of the liberty interest allegedly at issue, nor does he specify the constitutional amendment under which it arises.

In support of his second claim, Czekalski asserts that the Earned Time Credits law caused him to be deprived of the same "statutory liberty interest" due to "his poverty," in violation of an unspecified constitutional right to "purchase" a reduction in his sentence. Id. at ¶ 23.

Czekalski requests that this court order the Commissioner to reduce his sentence by 540 days.

### A. Due Process

It is unclear which constitutional rights Czekalski believes underlie his Section 1983 claims. Because both claims are predicated on the deprivation of a liberty interest, however, it appears possible that he means to state at least one claim for deprivation of his due process rights. See Greenholtz

v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979) (a protected liberty or property interest is requisite to a prisoner's constitutional due process claim).  However, it is well established that prisoners lack a protected liberty interest in release prior to completion of a properly imposed sentence.  Id.; see also Sandin v. Conner, 515 U.S. 472, 484 (1995).  This is because as a result of "a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."  Meachum v. Fano, 427 U.S. 215, 224, (1976) (emphasis supplied).  In the absence of a protected liberty interest, Czekalski cannot state a due process claim arising out of the fact that the benefits of the Earned Time Credits law are conditioned, among other things, on payment of fees.

    B.   Equal Protection

Because Czekalski's second claim is predicated in part on the allegation that he was deprived of the opportunity to seek a reduction in his sentence due to "his poverty," it appears possible that he intends to state an equal protection claim. "When a state. . . distinguishes between two similarly situated groups, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment.  Such scrutiny is normally of the rational basis variety unless the distinction involves a suspect classification or burdens a

fundamental right." LCM Enters. v. Town of Dartmouth, 14 F.3d 675, 678-679 (1st Cir. 1994).

To state an equal protection claim, a plaintiff must allege sufficient facts to support the conclusion that he was treated differently from others similarly situated. Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989). Czekalski has not done so here. Specifically, he has alleged neither that he attempted to avail himself of the opportunity to pursue an advanced degree but was denied that opportunity due to insufficient funds, nor that any other inmate with relatively greater financial resources was granted that opportunity. As a result, Czekalski has not stated a viable equal protection claim.

In addition, it does not appear that Czekalski could cure the deficiencies of a putative equal protection claim through amendment. Czekalski attributes differential access to the benefits of the Earned Time Credits law to his "poverty." However, it is well established that "poverty, standing alone, is not a suspect classification" for constitutional purposes. Harris v. McRae, 448 U.S. 297, 323 (1980); see also, e.g., Maher v. Roe, 432 U.S. 464, 471 (1977). It is further well established that poverty does not constitute a suspect classification in the specific context of access to education programs. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S.

1, 29-39 (1973). Moreover, as noted above, prisoners have no protected right to release prior to completion of properly imposed sentences. Greenholtz, 442 U.S. at 7. It follows that an equal protection claim could lie in connection with the Earned Time Credits law only to the extent the law lacks a rational basis.

There can be no serious argument, however, that the Earned Time Credits law would not survive rational basis scrutiny.

> Rationality review in equal protection cases "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993). Rather, an inquiring court must ask whether "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). If "any reasonably conceivable state of facts that could provide a rational basis for the classification" exists, the classification must be upheld. Beach, 508 U.S. at 313. As long as this modest burden is satisfied, Congress's handiwork will endure "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996).

Boivin v. Black, 225 F.3d 36, 43-44 (1st Cir. 2000). Contrary to Czekalski's suggestion, nothing about the law suggests legislative intent to permit wealthy inmates to "purchase" a reduction in their sentences. Instead, the General Court could rationally have intended to provide inmates with an incentive to better their prospects for post-incarceration employment and/or

otherwise to improve their lives through education during the period of their incarceration. For purposes of rational basis review, the question whether the law may have unfair consequences is not relevant. See FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). The existence of a conceivable rational basis is all that is necessary for the law to survive rationality review. Id.

II. No Complained-of Conduct Attributable to Defendant

In addition, it appears clear on the face of Czekalski's complaint that the named defendant is not responsible for (and cannot remedy) the alleged violation(s) underlying his claims. Czekalski expressly asserts that "the violation complained of is an act of the New Hampshire General Court. It is a legislative act not subject to alteration or amelioration by any administrative employee of the state." Doc. no. 1 at ¶ 5. Czekalski nevertheless seeks to bring claims arising out of that violation against the Commissioner.

In light of Czekalski's express assertion that neither the Commissioner nor the New Hampshire Department of Corrections caused whatever deprivation he suffered, he cannot state any claim under Section 1983 against the defendant. Section 1983 provides for a civil right of action available to plaintiffs whose constitutional or federal statutory rights are violated by

8

persons acting under color of state law.  42 U.S.C. § 1983.  A defendant may only be found liable under Section 1983 where the defendant's conduct caused the complained-of violation.  See, e.g., Rizzo v. Goode, 423 U.S. 362, 370-371 (1976).  On the face of Czekalski's allegations, neither the Commissioner nor the New Hampshire Department of Corrections took any action that resulted in or permitted a deprivation of Czekalski's rights.  According to Czekalski, the only act resulting in any such violation was passage of the Earned Time Credits law by the New Hampshire legislature.  See doc. no. 1 at ¶ 6.  It follows that Czekalski cannot state a viable Section 1983 claim against the Commissioner arising out of the facts he has alleged.

## CONCLUSION

For these reasons, the court will dismiss this complaint, with prejudice, unless Czekalski files an amended complaint stating a plausible federal claim on or before **May 18, 2020.**

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 2, 2020

cc: Jason A. Czekalski, pro se

9